UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

GAIL WALTER,

                          Plaintiff,

        v.                                          **DECISION AND ORDER**

HAMBURG CENTRAL SCHOOL DISTRICT,                    04-CV-996S
et al.,

                          Defendants.

## I. INTRODUCTION

Plaintiff Gail Walter ("Walter") commenced this action on December 17, 2004, alleging that the Hamburg Central School District (the "District"), Peter Roswell, Daniel George and Charles Amo (together, "Defendants") discriminated against her based on her sex and age, and retaliated against her for filing a charge of discrimination, when they failed to hire her for various permanent teaching positions.  Walter claims Defendants acted in violation of Title VII of the Civil Rights Act of 1964, as amended ("Title VII"), 42 U.S.C. §§ 2000e *et. seq.*; Title IX of the Education Amendments of 1972 ("Title IX"), 20 U.S.C. §§ 1681 *et seq.*; the Age Discrimination in Employment Act of 1967, as amended ("ADEA"), 29 U.S.C. §§ 621 *et seq.*; and the New York State Human Rights Law ("HRL"), N.Y. EXEC. L. §§ 290 *et seq.*  (Docket No. 1("Compl.")).

1

Presently before this Court is Defendants' Motion for Summary Judgment[1] seeking dismissal of the Complaint in its entirety.  (Docket No. 40.)  Walter opposes the motion.[2] For the following reasons, Defendants' motion is granted in part and denied in part.

## II.  BACKGROUND

### A.     Facts

Walter is a 50 year old female.  (Docket No. 56-1, Affidavit of Gail L. Walter, sworn to April 6, 2006 ("Walter Aff."), ¶ 3.)  She holds Bachelor and Master degrees in physical education and, in 1989, received a New York State Permanent Public School Teacher Certificate for grades K-12.  (Walter Aff., Ex. 7.)

In December 2000, Walter interviewed and was hired by the District as a long-term physical education ("PE") substitute teacher for grades K-5 at Union Pleasant Elementary School ("UPES") and Armor Elementary School.  (Pl's Statement ¶ 36; Walter Aff., Ex. 10; Defs' Statement ¶ 33; Declaration of Michael P. McClaren ("McClaren Decl."), Ex. B ("Walter Depo.") at 67-69.)  Walter worked in that position through the remainder of the 2000-2001 school year, and she continued thereafter in the same position under two

---

[1]  In support of its Motion, Defendants filed the Declaration of Michael P. McClaren, Esq. with Exhibits A-I ("McClaren Decl."), the Affidavit of Charles Amo with Exhibits A-E ("Amo Aff."), the Affidavit of Geoffrey Grace with Ex. A ("Grace Aff."), the Affidavit of Gail Lewis with Exhibits A-E ("Lewis Aff."), the Affidavit of Jackie Peffer with Exhibits A-D ("Peffer Aff."), the Affidavit of Margaret Moses with Exhibits A-C ("Moses Aff."), the Affidavit of Timothy Nyhart with Exhibits A-E), the Affidavit of Amy Takacs with Exhibits A-E ("Takacs Aff."), the Affidvit of Kelly Owens with Exhibits A-D ("Owens Aff."), a Memorandum of Law ("Defs' MOL") and a Local Rule 56.1 Statement of Undisputed Material Facts ("Defs' Satement").

In reply to Walter's opposition, Defendants filed a Reply Declaration of Michael P. McClaren, Esq. with Exhibit A ("McClaren Reply Decl."), the Reply Affidavit of Charles Amo ("Amo Reply Aff."), the Affidavit of Karen Farrell with Exhibits A-B ("Farrell Aff."), a Reply Memorandum of Law ("Defs' Reply MOL") and an Amended Local Rule 56.1 Statement of Undisputed Material Facts ("Defs' Am. Statement").

[2]  Walter has filed an opposing Memorandum of Law ("Pl's MOL"), a Local Rule 56.1 Counterstatement of Disputed Material Facts and the Declaration of Judith A. Biltekoff, Esq. with Exhibits A-K ("Biltekoff Decl.").  Plaintiff's Local Rule 56.1 submission contains both a counterstatement of material facts ("Pl's Statement") and a response to Defendants' Local Rule 56.1 Statement ("Pl's Response").

successive one year contracts.  (Pl's Statement ¶ 37; Walter Aff., Ex. 10.)

Before, during and after her employment as a long-term substitute teacher, Walter applied for permanent, full-time positions as a PE teacher with the District.  Specifically, Walter submitted applications in July 2000 (two positions available), May 2002, August 2003 and December 2003.  (Compl. ¶¶ 24, 30, 37, 43; Defs' Statement ¶¶ 2, 23.)  Another permanent position, for which Walter states she did not apply, was filled in November 2004.  (Pl's Statement ¶ 3.)

The positions at issue, the approximate months in which the positions were filled, and information about the successful applicants are as follows:

- July 2000     UPES, to teach grades K-2 and Adapted PE; filled by Mahoney, a male candidate under age 30;

- July 2000     Charlotte Avenue Elementary School, to teach grades K-5; filled by Meyer, a male candidate under age 25;

- June 2002     Hamburg Middle School; filled by Grobe, a male candidate, age 22;

- September 2003     UPES, to teach grades K-2 and Adapted PE; offered to Dux, a male candidate under age 25, and then to Smith, a male candidate age 25;

- February 2004     Hamburg High School; filled by Gordon, a female candidate under age 25;

- November 2004     Boston Valley Elementary School; not posted and filled by Wellington, a male under age 25.

(Pl's Statement, ¶ 3; Walter Aff., ¶¶ 27-29, 43, 53, 57-58, 66, 67-68; Defs' Statement, ¶¶ 38, 45, 81, 85.)

When filling positions, the District utilizes written Recruitment and Appointment Procedures for Probationary Teacher Appointments (the "Procedures").  (Biltekoff Decl.,

Ex. D.)  Pursuant to the District's Procedures, when a position becomes available, the Assistant Superintendent of Personnel assembles a "district level committee" whose members each screen candidate application packets and provide a numerical ranking for each candidate's "paper qualifications."  (Pl's Statement ¶ 21; Defs' Statement ¶ 20; Amo Aff. ¶ 13.)  The individual rankings are tallied, and a chart created that sets forth each candidate's overall rank.  (Pl's Statement ¶ 22; Walter Aff., Ex. 17; Defs' Statement ¶ 20.) The Assistant Superintendent, who is a member of the district level committee, selects applicants from the ranking sheet for district level interviews.  (Pl's Statement ¶ 23; Defs' Statement ¶ 20; Biltekoff Decl., Ex. D; Amo Aff. ¶ 14; Peffer Aff. ¶ 10.)  The other committee members are not advised of the applicants' relative rankings.  (*See, e.g.,* Amo Aff. ¶ 13; Grace Aff. ¶ 9.)

At the district level interview, each candidate is asked the same set of questions. (Biltekoff Decl., Ex. D; Defs' Statement ¶ 21.)  The committee members collectively select one or more of the interviewees to advance to "building level" interviews.  (*Id.*)

A "building level committee" then interviews the recommended candidates by presenting each with an identical set of questions, works to arrive at a consensus candidate to recommend for hire, and makes that recommendation to the District's Superintendent.  (Pl's Statement ¶ 25; Defs' Statement ¶ 22; Amo Aff. ¶ 21.)  The Superintendent delivers the committee's recommendation to the Board of Education, which then decides whether to make the offer of employment.  (Biltekoff Decl., Ex. D; Defs' Statement ¶ 15.)

4

**B.      Procedural Background**

On October 7, 2003, Walter filed a Notice of Claim against the District seeking damages arising from the District's failure to hire her for the K-2 PE position posted in August 2003.   (Walter Aff. Ex. 1, ¶ 9.)   Walter alleged a pattern of age and sex discrimination in the District's repeated failure to hire her on a permanent basis.  (*Id*. ¶ 11.)

On November 4, 2003, Walter filed a Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC"), alleging age and sex discrimination in the District's failure to hire her in 2003, and noting its prior decisions not to hire her in 2000 and 2002.  (*Id*. Ex. 2, ¶¶ 4-17.)  The EEOC issued a determination on or about July 27, 2004, in which it concluded that "the evidence obtained during [its] investigation establishes a violation of Title VII of the Civil Rights Act of 1964, as amended and the Age Discrimination in Employment Act."  (*Id.* Ex. 3 at 2.)  On September 21, 2004, the EEOC issued a Notice of Right to Sue.  (*Id.* Ex. 4.)

Walter filed a second EEOC charge on November 29, 2004, alleging that she had been denied a high school PE position in February 2004 because of her age and sex and in retaliation for filing her first EEOC charge.  (*Id.* Ex. 5, ¶¶ 4-10.)  The EEOC issued a Notice of Right to Sue on the second charge, at Walter's request, on or about December 14, 2004.  (Compl. ¶ 21.)

Walter commenced this action on December 17, 2004, within 90 days of the issuance of both Right to Sue Notices.

## III.  DISCUSSION

**A.     Summary Judgment Standard**

Federal Rule of Civil Procedure 56 provides that summary judgment is warranted where the "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." FED. R. CIV. P. 56(c).  A "genuine issue" exists "if the evidence is such that a reasonable jury could return a verdict for the non-moving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986).  A fact is "material" if it "might affect the outcome of the suit under governing law." Id.  "An alleged factual dispute regarding immaterial or minor facts between the parties will not defeat an otherwise properly supported motion for summary judgment." Powell v. National Bd. of Med. Exam'rs, 364 F.3d 79, 84 (2d Cir. 2004) (citation omitted).  In deciding a motion for summary judgment, the evidence and the inferences drawn from the evidence must be viewed in the light most favorable to the non-moving party. Weinstock v. Columbia Univ., 224 F.3d 33, 40 (2d Cir. 2000).

The Second Circuit has noted that trial courts should be particularly cautious in deciding whether to grant summary judgment in employment discrimination cases, because the employer's intent is often at issue. Schwapp v. Town of Avon, 118 F.3d 106, 110 (2d Cir. 1997).  However, the Supreme Court more recently has "reiterated that trial courts should not 'treat discrimination differently from other ultimate questions of fact.'" Reeves v. Sanderson Plumbing Prods., Inc., 530 U.S. 133, 148, 120 S. Ct. 2097, 147 L. Ed. 2d 105 (2000) (quoting St. Mary's Honor Ctr. v. Hicks, 509 U.S. 502, 524, 113 S. Ct.

2742, 125 L. Ed. 2d 407 (1993)).  In other words, summary judgment can be appropriate even in the fact-intensive context of discrimination cases.  This is consistent with a principle purpose of the summary judgment rule; "to isolate and dispose of factually unsupported claims."  Celotex Corp. v. Catrett, 477 U.S. 317, 323-24, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986).

**B.    TIMELINESS OF PLAINTIFF'S FEDERAL CLAIMS**

**1.    Title VII and the ADEA**

To maintain a discrimination action under Title VII, a plaintiff must file a timely charge with the EEOC or the equivalent state agency, receive from that agency a right to sue letter, and commence an action within 90 days after receipt of that letter.  Van Zant v. KLM Royal Dutch Airlines, 80 F.3d 708, 712 (2d Cir. 1996); Cornwell v. Robinson, 23 F.3d 694, 706 (2d Cir. 1994).  Similarly, a court may hear only those ADEA claims that are included in a timely filed EEOC charge.[3]  Holowecki v. Federal Express Corp., 440 F.3d 558, 562 (2d Cir. 2006).  In New York state, where state and local agencies have the authority to investigate claims of discrimination, an administrative charge must be filed within 300 days of the alleged unlawful conduct.  Forsyth v. Federation Employment and Guidance Serv., 409 F.3d 565, 572 (2d Cir. 2005) (citing 42 U.S.C. § 2000e-5(e)(1)).

The "filing [of] a timely charge of discrimination with the EEOC is not a jurisdictional prerequisite to suit in federal court, but a requirement that, like a statute of limitations, is subject to waiver, estoppel, and equitable tolling."  Zipes v. Trans World Airlines, Inc., 455

---

[3] Unlike Title VII, the ADEA does not require that the claimant receive a right to sue letter prior to commencing an action in federal court.  However, if the EEOC issues a right to sue letter, the claimant must commence an action within 90 days after its receipt.  Holowecki, 440 F.3d at 563.

U.S. 385, 393, 102 S. Ct. 1127, 71 L. Ed. 2d 234 (1982).   However, circumstances supporting exceptions to the statutory requirements are rare.  Twenty years after Zipes, the Supreme Court had occasion to discuss the applicability of the continuing violation theory to extend the administrative filing period and reconfirmed that "'strict adherence to the procedural requirements specified by the legislature is the best guarantee of evenhanded administration of the law.'" National R.R. Passenger Corp. v. Morgan, 536 U.S. 101, 108, 122 S. Ct. 2061, 153 L. Ed. 2d 106 (2002) (quoting Mohasco Corp. v. Silver, 447 U.S. 807, 826 (1980)).

In calculating the procedural limitation periods in Morgan, the Supreme Court held that discrete acts of discrimination or retaliation are deemed to have occurred on the date that they happened.  Therefore, a party must file an EEOC charge within 300 days after the complained of act or lose the ability to recover for it.  536 U.S. at 108.  Discrete acts generally are easy to identify and include such things as termination, failure to promote, denial of transfer or, as is alleged in this case, refusal to hire.  *Id.* at 114.

Defendants contend that Walter's claims are based on discrete events.  Thus, they argue that to the extent Walter's claims of age and gender discrimination are based on events occurring prior to January 8, 2003—more than 300 days prior to the filing of her November 4, 2003 EEOC charge—they are time-barred.

Walter counters by urging that the District engaged in a "pattern and practice" of discriminatory hiring from 2000 to the present based on its Recruitment and Appointment Procedures for Probationary Teacher Appointment, this pattern was expressly referenced in her November 2003 EEOC charge, and, therefore, the events occurring prior to January 8, 2003 are actionable as part of a "continuing violation."

8

A continuing violation may be found in two circumstances: (1) where there is proof of specific ongoing discriminatory policies or practices, or (2) where specific and related instances of discrimination are permitted by the employer to continue unremedied for so long as to amount to a discriminatory policy or practice. Balenti v. Massapequa Union Free Sch. Dist., 03-CV-1193, 05-CV-5271, 2006 U.S. Dist. LEXIS 62899, at *23 (E.D.N.Y. Sept. 5, 2006) (citations and quotation marks omitted).  When a claim is based on a continuing violation, the commencement of the statute of limitations period may be delayed until the final act of discrimination in furtherance of the discriminatory policy or practice.  Butts v. New York City Dep't of Pres. and Dev., 00-CV-6307, 2007 U.S. Dist. LEXIS 6534, at *22 (S.D.N.Y. Jan. 29, 2007) (citing Washington v. County of Rockland, 373 F.3d 310, 317 (2d Cir. 2004)).

The Court finds that Walter's reliance on a continuing violation theory fails for two reasons.  First, in Morgan, the Supreme Court severely limited the second basis for a continuing violation when it held that "discrete discriminatory acts are not actionable if time barred, *even when they are related to acts alleged in timely filed charges*.  Each discrete discriminatory act starts a new clock for filing charges alleging that act."  536 U.S. at 113 (emphasis supplied); *see also*, Gaston v. New York City Dep't of Health, 432 F. Supp. 2d 321, 327-28 (S.D.N.Y. 2006).  After Morgan, the continuing violation theory remains viable as to related acts that, taken together, constitute a single claim of hostile work environment, but not as to discrete discriminatory acts such as are alleged by Walter.  *See* Rechichi v. Eastman Kodak Co., 02-CV-6249, 2004 U.S. Dist. LEXIS 14896, at *13-14 (Jan. 21, 2004).  As already noted, Morgan specifically identified a refusal to hire as a readily recognized, discrete act.  536 U.S. at 114.

9

Second, even if one assumes the continuing violation doctrine is viable as to "pattern or practice" claims,[4] Walter has not established the existence of a "pattern or practice" as that concept has been defined in the relevant authority. Pattern or practice claims, the first basis for a continuing violation, involve multiple incidents of discrimination against individuals in a particular protected class arising from a discriminatory policy or mechanism, such as a seniority system or an employment test. *See, e.g.,* Robins v. Metro-North Commuter R.R. Co., 267 F.3d 147, 153 (2d Cir. 2001), *cert. denied*, 535 U.S. 951, 122 S. Ct. 1349, 152 L. Ed. 2d 251 (2002); Fitzgerald v. Henderson, 251 F.3d 345, 359 (2d Cir. 2001), *cert. denied*, 536 U.S. 922, 122 S. Ct. 2586, 153 L. Ed. 2d 776 (2002). To sustain a pattern or practice claim, a plaintiff must establish that intentional discrimination was the company's standard operating procedure—its regular practice rather than an unusual one. Employees Committed for Justice v. Eastman Kodak Co. ("ECJ"), 407 F. Supp. 2d 423, 427-28 (W.D.N.Y. 2005) (quoting Int'l Brotherhood of Teamsters v. United States, 431 U.S. 324, 336, 97 S. Ct. 1843, 52 L. Ed. 2d 396 (1977)).

Because such claims are based on the existence of a company-wide policy or mechanism, "class actions are uniquely suitable for litigating discrimination claims under the pattern and practice framework." ECJ, 407 F. Supp. 2d at 428 (citing Allison v. Citgo Petroleum Corp., 151 F.3d 402, 409 (5th Cir. 1998)). Indeed, most districts in this Circuit have seriously questioned whether courts can consider pattern or practice claims outside the context of class actions, and one district has held that it cannot. *See* Heap v. County of Schenectady, 214 F. Supp. 2d 263, 271 (N.D.N.Y. 2002) (dismissing pattern or practice

---

[4] The Supreme Court expressly declined to reach the timely filing question with respect to "pattern or practice" claims in Morgan, because no such claim was then at issue. 526 U.S. at 115 n.9.

claim as improper in the context of an individual disparate treatment case);   *see also*,

Idrees v. City of New York, 04 Civ. 2197, 2005 U.S. Dist. LEXIS 7643, at *17 (S.D.N.Y.

May 3, 2005) ("it is not even clear that a plaintiff may bring a pattern-or-practice claim

outside of a class action suit")  Foster-Bey v. Henderson, 98-CV-1097, 2000 U.S. Dist.

LEXIS 6634, at *3 n.1 (D. Conn. Apr. 7, 2000) (court not convinced that a plaintiff may

bring a pattern or practice claim in non-class action complaint); Calabritto v. Nassau

County Dist. Attorney, 920 F. Supp. 370, 377 (E.D.N.Y. 1996) (citing to courts that have

questioned the applicability of a pattern or practice analysis to individual plaintiff

discrimination suits); In re Western Dist. Xerox Litig., 850 F. Supp. 1079, 1083 (W.D.N.Y.

1994) (noting that pattern or practice trials generally occur in the context of class actions

or suits brought by the Government).

This Court need not decide the appropriateness of a single plaintiff pattern or

practice claim today.  Even were the Court to conclude that Walter can properly bring a

pattern or practice claim on behalf of herself alone, she has not come forward with

evidence supporting a conclusion that intentional discrimination was the District's standard

operating procedure.  Although Walter makes reference to the District's Procedures in her

opposition to Defendants' motion, she does not contend that the recruitment and

appointment process has systematically disadvantaged a particular protected class.[5]  Nor

does she otherwise offer evidence of the existence of a District-wide discriminatory policy

---

[5]  The Court, having reviewed the Procedures, cannot discern any basis for an argument that they inherently disfavor one or more protected groups.

11

or mechanism.[6]  It is well-settled that a plaintiff cannot maintain a claim based on an ongoing discriminatory policy, particularly when responding to a motion for summary judgment, simply by invoking the words "pattern" or "practice" or by conclusorily alleging disparate impact.  Mirasol v. Gutierrez, 05 Civ. 6368, 2006 U.S. Dist. LEXIS 16465, at *14-15 (S.D.N.Y. Apr. 5, 2006) (citations and internal quotation marks omitted); In re Western Dist. Xerox Litig., 850 F. Supp. at 1086 (individual incidents, without more, do not "give rise to an inference that defendant engaged in a corporate-wide pattern or practice of discrimination").

In sum, Walter identifies discrete acts that are not in themselves sufficient to support a "pattern or practice" claim.  The discrete acts alleged, even if related, cannot form the basis for a continuing violation.  Accordingly, Walter's Title VII and ADEA discrimination claims based on the District's 2000 and 2002 hiring decisions are time-barred.

## 2.      Title IX

Title IX of the Education Amendments of 1972 does not contain a statute of limitations.  Although there exists a catchall four-year statute of limitations for actions arising under federal statutes, it applies only to statutes enacted after December 1, 1990. 28 U.S.C. § 1658; Jones v. R.R. Donnelley & Sons, Co., 541 U.S. 369, 124 S. Ct. 1836, 158 L. Ed. 2d 645 (2004).  For those statutes enacted earlier, such as Title IX, courts continue to apply the most appropriate or analogous state statute of limitations.  Curto v.

---

[6]  While Walter suggests that the Procedures (though presumably neutral on their face) were applied in a discriminatory manner because the selection process was entirely subjective (PI's MOL at 12-13), she has not attempted to explain how the purported subjectivity of the process consistently disadvantaged all applicants in certain protected categories.  See Byrnie v. Town of Cromwell, Bd. of Educ., 243 F.3d 93, 111 (2d Cir. 2001) ("Simply gesturing towards the hiring process as a whole will not satisfy the requirement that the plaintiff identify a 'specific employment practice' that is the cause of the statistical disparities.").

Edmundson, 392 F.3d 502, 504 (2d Cir. 2004) (quoting Goodman v. Lukens Steel Co., 482 U.S. 656, 660, 107 S. Ct. 2617, 96 L. Ed. 2d 572 (1987)).

The Second Circuit and other circuits that have considered the Title IX limitations issue have concluded that such claims are most closely analogous to personal injury actions. Curto, 392 F.3d at 504 (citations omitted). In New York, personal injury actions must be filed within three years from the time the cause of action accrued. N.Y. C.P.L.R. § 214(5); Curto, 392 F.3d at 504. Applying the three year statute of limitations to this case renders all events occurring prior to December 17, 2001—more than three years prior to the commencement of this action—time-barred.

Although Walter urges that the earlier events are viable claims under a continuing violation theory, she does not cite to a single decision in support of the theory's applicability in the Title IX context. Indeed, it appears that few courts have been confronted with this question. In one pre-Morgan case brought in this Circuit, the district court recited the differences in the structure and goals of Title VII and Title IX,[7] and went on to "question the advisability of applying the oft-disfavored continuing violation exception to Title IX claims." Folkes v. New York College of Osteopathic Medicine, 214 F. Supp. 2d 273, 288-89 (E.D.N.Y. 2002). Without deciding the issue, the court went on to apply the standards for a continuing violation exception to the plaintiff's Title IX claim and found that the circumstances of the case did not warrant its application in any event.

This Court has located only one post-Morgan decision that considered the

---

[7] In particular, the Court noted that: Title IX involves a condition (a promise not to discriminate in exchange for federal funds) within a contractual framework as opposed to Title VII's outright prohibition on discrimination, Title IX applies only to recipients of federal funds in contrast to Title VII's application to all employers, and Title IX's focus is on protection through prevention of discriminatory practices whereas Title VII's aim is to compensate and make whole the victims of discrimination. 214 F. Supp. 2d at 288.

applicability of the continuing violation theory in a Title IX context.  After noting that federal courts look to Title VII cases to inform their analyses under Title IX, the <u>Jennings v. University of N.C. at Chapel Hill</u> court, citing <u>Morgan</u>, dismissed the plaintiffs' Title IX claims as time-barred to the extent they were based on discrete acts of discrimination occurring more than three years prior to the filing of the complaint.  240 F. Supp. 2d 492, 499-500 (M.D.N.C. 2002).

Applying the rationale of the foregoing decisions, this Court finds that even assuming the continuing violation is applicable in the Title IX context, it does not extend the three-year limitations period here.  Walter's Title IX claim (Compl. ¶¶ 120-128) is based on the same discrete, discriminatory acts as her Title VII claim and she has not identified a systematic discriminatory policy that would make this a "pattern or practice" case. Accordingly, Walter's Title IX claim is time-barred to the extent it is based on the hiring decisions made in 2000.

## C.   CONDITIONS PRECEDENT TO AND TIMELINESS OF PLAINTIFF'S STATE CLAIMS

Pursuant to N.Y. EDUC. LAW § 3813(1), litigants must file a notice of claim in advance of a suit against a school district:

> No action or special proceeding, for any cause whatever, except as hereinafter provided . . . shall be prosecuted or maintained against any school district, . . . officer of a school district, board of education, . . . or school . . . unless it shall appear by and as an allegation in the complaint or necessary moving papers that a written verified claim upon which such action or special proceeding is founded was presented to the governing body of said district or school within three months after the accrual of such claim, and that the officer or body having the power to adjust or pay said claim has neglected or refused to make an adjustment or payment thereof for thirty days after such presentment.

Furthermore, "no action or special proceeding shall be commenced against any entity

specified in [§ 3813(1)] more than one year after the cause of action arose . . . ."  N.Y. EDUC. LAW § 3813(2-b).

It is well-settled that both of these Education Law provisions apply to employment discrimination claims brought against a school district pursuant to the New York Human Rights Law.  *See* Donlon v. Board of Educ. of the Greece Cent. Sch. Dist., 06-CV-6027, 2007 U.S. Dist. LEXIS 2724, at *6, 15-17 (W.D.N.Y. Jan. 12, 2007) (recognizing applicability of both the notice of claim requirement and one year statute of limitations to plaintiff's state law discrimination claims); Bucalo v. East Hampton Union Free Sch. Dist., 351 F. Supp. 2d 33, 34-37 (E.D.N.Y. 2005) (the notice of claim requirement in 3813(1) and the one-year limit in 3813(2-b) clearly apply to all New York State actions or proceedings, including employment discrimination and retaliation claims); Solomon-Lufti v. New York City Dep't of Educ., 05 CV 7260, 2006 U.S. Dist. LEXIS 66685, at *10 (S.D.N.Y. Sept. 13, 2006) (finding plaintiff's HRL claims barred by Education Law's one-year statute of limitations); Hilow v. Rome City Sch. Dist., 91-CV-567, 1994 U.S. Dist. LEXIS 8953, at *26-27 (N.D.N.Y. June 29, 1994) (dismissing HRL causes of action for lack fo jurisdiction where plaintiff did not file timely notice of claim and could not file late notice given expiration of one-year statute of limitations).

Defendants contend that, because Walter filed a timely notice of claim only with respect to the position for which she unsuccessfully interviewed in September 2003 (*see* Walter Aff. ¶ 6, Ex. 1), that hiring decision is the only one on which she can predicate a claim under the HRL.  Walter does not dispute, and therefore concedes, that §§ 3813(1) and (b-2) apply to her state law claims.  Nevertheless, she argues that her state law claims are timely because they are based on a pattern and practice of discriminatory hiring.

15

Walter offers no supporting citations or analysis.

The Court already has determined that because Walter has not come forward with evidence of a District-wide discriminatory policy or mechanism, her "pattern or practice" argument fails.  Thus, based on the authority discussed above, the Court finds that Walter may maintain her HRL claims only to the extent they are based on the 2003 hiring decision; the sole incident for which she filed a timely notice of claim.

## D.    INDIVIDUAL LIABILITY UNDER THE STATUTES AT ISSUE

Defendants urge, and Walter concedes, that individual defendants cannot be held personally liable under Title VII, the ADEA or Title IX.  <u>Schiano v. Quality Payroll Sys.</u>, 445 F.3d 597, 608 (2d Cir. 2006) (no individual liability under Title VII); <u>Ocasio v. Riverbay Corp.</u>, 06 Civ. 6455, 2006 U.S. Dist. LEXIS 93104, at *17 (S.D.N.Y. Dec. 20, 2006) (no individual liability for violations of the ADEA); <u>Patenaude v. Salmon River Cent. Sch. Dist.</u>, 03-CV-1016, 2005 U.S. Dist. LEXIS 29066, at *14 (N.D.N.Y. Feb. 16, 2005) (no individual liability under Title IX).   Accordingly, the federal claims against Defendants Roswell, George and Amo will be dismissed.

However, individual  liability can be imposed under New York's HRL in certain circumstances.  Pursuant to the New York Court of Appeals' decision in <u>Patrowich v. Chem. Bank</u>, individual liability under the HRL can lie against an employee with significant supervisory authority who is shown to have: (1) an ownership interest in the entity, or (2) the power to do more than carry out personnel decisions made by others.  63 N.Y.2d 541, 542 (1984) (per curiam); <i>see also</i> <u>Foley v. Mobil Chem. Co.</u>, 214 A.D.2d 1005, 1006 (1995).  Furthermore, the Second Circuit has found that where the foregoing standard is

not satisfied, an individual may nonetheless be held liable under a theory of aiding and abetting pursuant to N.Y. EXEC. LAW § 296(6), which makes it "an unlawful discriminatory practice for any person to aid, abet, incite, compel or coerce the doing of any of the acts forbidden under [the HRL], or to attempt to do so."  *See* Tomka v. Seiler Corp., 66 F.3d 1295, 1317 (2d Cir. 1995), *abrogated on other grounds by*, Burlington Indus., Inc. v. Ellerth, 524 U.S. 742, 118 S. Ct. 2257, 141 L. Ed. 2d 633 (1998); *see also*, Glinski v. RadioShack, 03-CV-930, 2006 U.S. Dist. LEXIS 71707, at * (W.D.N.Y. Sept. 29, 2006).  This second basis for personal liability turns on whether the individual actually participated in the conduct giving rise to the discrimination claim.

It already has been determined that Walter's HRL claims of age and gender discrimination are limited to the decision not to hire her for a permanent position in 2003. In 2003, Defendant Amo was the District's Director of Health, Physical Education and Recreation, Defendant George was Assistant Superintendent of Personnel, and Defendant Roswell was Superintendent.  Defendants Amo and George were members of the district level interview committee assembled for the 2003 position.  (Pl's Statement ¶ 60; Defs' Statement ¶ 65; Biltekoff Decl., Ex. D; Lewis Aff. ¶ 7; Nyhart Aff. ¶ 6.)  Walter was interviewed by the district level committee, but was not recommended to proceed to the building level interviews.  (Defs' Statement ¶ 80.)

Defendants argue that none of the named individuals can be held personally liable because neither of the Patrowich factors is met.  Obviously, the "ownership interest" factor cannot be met where the employer is a public school district.  Defendants also urge that none of the named individuals has the power to make personnel decisions; it is the Board of Education that makes offers of employment.  The Court agrees that, to be held liable

17

under Patrowich, the individual defendants, singly or collectively, must have authority to make decisions relative to hiring, firing, salaries, benefits or similar matters. Heinemann v. Howe & Rusling, 260 F. Supp. 2d 592, 595 (W.D.N.Y. 2003). The committee's charge here—to screen applications, interview candidates and make recommendations for advancement to a second round of interviews—does not fall within the scope of Patrowich.

However, Defendants make no mention of aider and abettor liability. Defendants acknowledge that Amo and George were involved in a group decision-making process that resulted in a consensus decision not to advance Walter to the next level of the interview process. Were a factfinder to conclude that the decision was discriminatorily based on Walter's age and/or gender, Amo and George could be personally liable based on their "actual participation" in that decision. Tomka, 66 F.3d at 1317. Accordingly, the HRL claims against Defendants Amo and George will not be dismissed at this juncture.

Roswell is another matter. He testified that he has no involvement in the recruitment process until he receives a recommendation for hire which he then, *pro forma*, passes on to the Board of Education. (McClaren Decl., Ex. H at 29:23-30:18.) Plaintiff has not pointed to evidence that Roswell was aware of Walter's candidacy for the 2003 position or had any involvement in the decision not to advance her to the building level interviews. Therefore, there is no basis for finding him individually liable under the "actual participation" standard and the HRL claims will be dismissed as to Defendant Roswell.

**E.    Walter's Claims of Discrimination and Retaliation**

Based on the foregoing, the claims that remain are: Walter's Title IX discrimination and/or retaliation claims against the District based on hiring decisions made in and after

2002, her Title VII and ADEA discrimination and retaliation claims against the District based on hiring decisions made in and after 2003, and her HRL discrimination and retaliation claims against the District, Amo and George relative to the September 2003 decision only.

### 1. Legal Standard Governing Walter's Claims

Where, as here, a plaintiff does not come forward with direct evidence of discrimination, the Court applies the burden shifting analysis of McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802-804, 93 S. Ct. 1817, 36 L. Ed. 2d 668 (1973) and Texas Dep't of Comt'y Affairs v. Burdine, 450 U.S. 248, 253, 101 S. Ct. 1089, 67 L. Ed. 2d 207 (1981). Under this standard, Walter must first establish a *prima facie* case of discrimination. McDonnell Douglas, 411 U.S. at 802. The burden Walter carries at the *prima facie* stage of summary judgment is minimal. Fisher v. Vassar College, 114 F.3d 1332, 1340 n.7 (2d Cir. 1997) (*en banc*), *cert. denied*, 522 U.S. 1075, 118 S. Ct. 851, 139 L. Ed. 2d 752 (1998).

If Walter meets her initial burden, a rebuttable presumption of discrimination arises and the burden then shifts to Defendants to articulate a legitimate, non-discriminatory reason for the challenged employment action. Burdine, 450 U.S. at 254. If Defendants succeed in making their showing, "the presumption . . . arising with the establishment of the *prima facie* case drops from the picture." Weinstock, 224 F.3d at 42 (citing St. Mary's Honor Ctr. v. Hicks, 509 U.S. 502, 510-11, 113 S. Ct. 2742, 125 L. Ed. 2d 407 (1993)).

The burden then shifts back to Walter to produce "evidence that [Defendants'] proffered, non-discriminatory reason is a mere pretext for actual discrimination."

Weinstock, 224 F.3d at 42.  "In short, the question becomes whether the evidence, taken as a whole, supports a sufficient rational inference of discrimination."  *Id.*  However, "evidence contradicting the employer's given reason—without more—does not necessarily give logical support to an inference of discrimination."  James v. New York Racing Ass'n, 233 F.3d 149, 154 (2d Cir. 2000).  Put simply, "[i]t is not enough . . . to disbelieve the employer; the factfinder must [also] believe the plaintiff's explanation of intentional discrimination."  *Id.* at 156 (quoting St. Mary's, 509 U.S. at 519).

Although the foregoing three-step analysis emerged in the context of Title VII actions, the same standard applies to the analyses of discrimination claims brought under the ADEA, Title IX and the HRL.  Smith v. Xerox Corp., 196 F.3d 358, 363 n.1 (2d Cir. 1999) (claims under Title VII, the ADEA and the HRL are analyzed identically); Murray v. New York Univ. College of Dentistry, 57 F.3d 243, 248 (2d Cir. 1995) (Title VII standard for analyzing discrimination and retaliation claims applies to claims brought by employees under Title IX).

### 2.    The Discrimination Claims

#### a.    The Prima Facie Case

To establish her *prima facie* case of failure to hire, Walter must show that: "(i) at the relevant time [she] was a member of the protected class; (ii) [she] was qualified for the job; (iii) [she] suffered an adverse employment action; and (iv) the adverse employment action occurred under circumstances giving rise to an inference of discrimination, such as the fact that" someone outside of her protected class(es) was hired instead.  Woodman v. WWOR-TV, Inc., 411 F.3d 69, 76 (2d Cir. 2005) (citations and quotations omitted).

### (i.) Gender

Defendants do not contend that Walter has failed to establish a *prima facie* case of gender discrimination and, thus, implicitly concede that she has.

### (ii.) Age

Defendants do argue, however, that Walter cannot meet her burden with respect to age discrimination because she has "no proof whatsoever" that Defendants had any knowledge of her age. *See* <u>Woodman</u>, 411 F.3d at 77 (defendant must have some knowledge of the age discrepancy between the plaintiff and the successful candidate to support an inference of discrimination at the *prima facie* stage); <u>Alvarez v. Nicholson</u>, 03 Civ. 4173, 2005 WL 1844595, at * 4 (S.D.N.Y. Aug. 3, 2005) (same).

Walter has submitted materials from her District personnel file.  The District's teacher application form requires that candidates identify the dates of their student teaching and teaching experiences.  (Walter Aff., Ex. 7.)  In addition, Walter submitted a resume providing the years in which she obtained her Bachelor and Master degrees.  (*Id.*)  Other candidates submitted like materials.  (*Id.*, Exs. 8, 9, 14, 16, 19. 20.)  It is readily apparent from these submissions that Walter graduated from college between 15 and 23 years prior to the successful candidates.

The various committee members who submitted affidavits in support of Defendants' motion each attested to having read the candidates' application materials.  (*See, e.g.*, Grace Aff. ¶¶ 8-9 (2002); Amo Aff. ¶¶ 13-14 (2003); Owens Aff. ¶¶ 8-9 (2004)).  Walter need not prove that the committee members knew each applicant's precise birth date to establish her *prima facie* case; circumstantial evidence of knowledge as to the approximate

age discrepancy is sufficient.  Woodman, 411 F.3d at 83-84.  Accordingly, Walter has established a *prima facie* case of age discrimination.

### b.    Defendants' Legitimate, Non-Discriminatory Reasons

The District's hiring procedures are described above.  All committee members who submitted an affidavit on Defendants' behalf, with the exception of Gale Lewis, state that at the outset of the interview process, they viewed each candidate as being equally qualified in that their paper credentials had been screened and each was deemed to possess the minimum qualifications for the position.  The determination as to the "best" candidate(s) for the position thus rested on the interview process.

According to the affiants, those committee members with expertise relative to the open position—in this case, physical education—would rate the technical accuracy of the candidate's responses to interview questions.  Those committee members who did not have expertise in that subject area evaluated the candidates' responses, demeanor and presentation to determine whether the candidate would communicate effectively with students and work cooperatively with colleagues.  Presentation and performance in the interview process was given far greater weight than teaching experience, type of teaching certificate held or number of degrees obtained.  Indeed, although the committee members were given each interviewee's application materials on the days of the interviews, none could recall reviewing or referencing those materials.  (*See* Amo Aff. ¶¶ 8-11; Grace Aff. ¶¶ 13-15; Lewis Aff. ¶¶ 14-17; Moses Aff. ¶¶ 10-13; Nyhart Aff. ¶¶ 11-14; Owens Aff. ¶¶ 12-15; Peffer Aff. ¶¶ 12-15; Takacs Aff. ¶¶ 12-15 for committee members' approach to interviews.)

Defendants do not dispute that Walter met the qualifications for each of the positions at issue.[8]  However, Defendants argue that there were legitimate reasons for concluding, in each case, that she was not the "best" candidate.  Although the rationales given for the various committees' decisions are discussed more fully below, the Court notes at this juncture that no committee member who assessed Walter's responses for technical accuracy in the substantive area of physical education pointed to any deficiency in that regard.  Rather, their decisions rested on other aspects of Walter's interview performance.

In presenting their rationales, Defendants liken this case to Richane v. Fairport Cent. Sch. Dist., 179 F. Supp. 2d 81 (W.D.N.Y. 2001), an age discrimination action brought by a 52 year old male who unsuccessfully attempted to obtain a social studies teaching position with the Fairport District.  In Richane, the assistant superintendent who conducted the final round of interviews was of the opinion that the plaintiff was less qualified than other candidates, performed poorly in the interview and did not demonstrate an ability and willingness to implement certain classroom strategies.[9]  Richane, 179 F. Supp. 2d at 86. See also,  Bunk v. General Servs. Admin., 06-CV-6127, 408 F. Supp. 2d 153 (W.D.N.Y. 2006) (employer's documented assessment that another candidate gave a higher quality interview and submitted a more comprehensive business plan for the office than plaintiff did was sufficient to meet its burden of offering legitimate business reason for its hiring

---

[8]  Again, Gale Lewis is the only affiant who holds a contrary view.

[9]  Among other things, it was noted that the plaintiff was one of only two finalists who did not have a masters degree; three applicants had recent experience in permanent teaching positions, whereas the plaintiff's recent experience was as a substitute only; the plaintiff did not demonstrate proficiency in the Department of Education's endorsed teaching methodology and he did not demonstrate an awareness of how to motivate a diverse learning population.  Richane, 179 F. Supp. 2d at 88.

decision); Brierly v. Deer Park Union Free Sch. Dist., 359 F. Supp. 2d 275 (E.D.N.Y. 2005) (employer succeeded in carrying its burden where it offered ample evidence that successful candidate for one position performed better on interview and had strong employment record in contrast to plaintiff's history of written warnings and reprimands; and successful candidate for second position performed better in interview and had greater administrative experience than plaintiff).

Because Richane agreed that the assistant superintendent's explanation satisfied Fairport's burden of advancing a legitimate reason for its decision, the court's analysis focused on "the narrow issue of whether plaintiff has come forward with sufficient evidence" of pretext. *Id*. In that regard, the court noted that "[w]hat matters is why Fairport did what it did, not whether it was wise to do so. Employers should be free to choose the person that they honestly (even if erroneously) consider the better-qualified candidate." *Id*. at 89. In granting Fairport's summary judgment motion, the court summed up the case as one "of a person who, after interviewing along with many other teachers in a competitive school district, disagrees with the reasons articulated for his rejection," but has not come forward with evidence that those reasons are a ruse. *Id*. at 90.

One significant difference between this case and Richane is that the adequacy of Defendants' legitimate reasons for not hiring Walter is not undisputed. According to Walter, she was objectively better qualified that the successful candidates in each instance and Defendants' nebulous rationale is not sufficient to overcome that fact. Walter relies primarily on Byrnie v. Town of Cromwell, Bd. of Educ., 243 F.3d 93 (2d Cir. 2001).

Like Richane, the focus in Byrnie is on the plaintiff's ability to overcome the defendants' legitimate proffered reason for its hiring decision, not on whether the

24

defendants adequately carried their burden.  243 F.3d at 102.  However, the Second Circuit did touch on the employer's burden when it agreed with the district court's determination that "there is nothing unlawful about an employer's basing its decision on subjective criteria, such as the impression an individual makes during an interview."  *Id*. at 104 (citation omitted).  The Circuit Court made the following observation about the employer's burden when offering a rationale based on subjective impressions:

> [A]n employer may not use wholly subjective and unarticulated standards to judge employee performance . . . .  This is because any defendant can respond to a [discrimination charge] with a claim of some subjective preference and prerogative and, if such assertions are accepted, prevail in virtually every case.  Accordingly, and employer's explanation of its reasons must be clear and specific in order to afford the employee a full and fair opportunity to demonstrate pretext.  Where an employer's explanation, offered in clear and specific terms, is reasonably attributable to an honest even though partially subjective evaluation of . . . qualifications, no inference of discrimination can be drawn.

*Id.* at 104-105 (internal citations and quotations omitted) (alteration in original).  *See also*, Widoe v. District #111 Otoe County Sch., 147 F.3d 726, 730 (8th Cir. 1998) (school's decision to hire one teacher over another based on interview performances raised genuine controversy at summary judgment state as to whether age was a factor in the application of subjective criteria or formation of subjective impressions).

Walter urges that because Defendants disregarded the differences in applicants' credentials and based hiring decisions solely on subjective interview assessments that lacked any defined criteria, they have no supportable basis from which to advance a legitimate explanation.  This Court will consider the parties' cited authority in the context of each hiring decision at issue.

### (i).    The 2002 Position

Walter's claim relative to the 2002 position is one for discrimination under Title IX. Title IX provides, in relevant part: "[n]o person in the United States shall, on the basis of sex, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any education program or activity receiving Federal financial assistance."  20 U.S.C. § 1681(a).

Defendants do not specifically address this position in their Memorandum, nor do they articulate a basis for their 2002 hiring decision in their Statement of Undisputed Material Facts.[10]  The record includes the affidavits of Geoffrey Grace and Gale Lewis, two members of the 2002 district level and building level committees, but neither articulates a clear and specific basis for the 2002 hiring decision.[11]

Grace states that the district level committee passed four candidates (three males and one female) to the building level for further interviews.  (Grace Aff. ¶ 16.)  Walter, who was permitted to skip the district level interview because of her service in the District as a long-term substitute, was scheduled for a building level interview as well.  (*Id.*)  Grace recalls that the three male candidates ranked first, second and third in the building level interviews.  However, the first two were quickly disqualified based on concerns that they were interested in being coaches first and teachers second.  The third-ranked male

---

[10]  Defendants have, in effect, offered a single explanation for their decisions not to hire Walter on a number of different occasions.  To the extent the explanation rests on testimony or evidence relating to interviews and assessments occurring after 2002, the explanation is rejected as a basis for the 2002 decision.

[11]  The other district level members were Daniel George and Pat Cauley.  The building level members included all members of the district level committee, plus Steve Burley, Chris Mucica, Patty Blake and Joanne Erickson.  (Grace Aff. ¶¶ 11, 17.)

candidate then was recommended for hire.  (*Id.* ¶ 20.)  Grace does not state any reasons for the consensus that the three male candidates were "best" in the interview process (particularly where two were quickly deemed unsuitable), nor does he recall anything about Walter's interview performance.  Lewis does not address the 2002 hiring process at all in her affidavit.

Because Defendants have offered no clear and specific reasons for selecting any other candidate over Walter in 2002, summary judgment is not warranted with respect to the 2002 position.

### (ii.)    The 2003 Position

Walter has demonstrated a *prima facie* case of gender and age discrimination under Title VII, the ADEA, Title IX and the HRL relative to the filling of the 2003 position at UPES, where she had been teaching as a long-term substitute.

Defendants have submitted the affidavits of Defendant Amo, Gale Lewis, Timothy Nyhart and Amy Takacs, all of whom served on the district level committee.  Also on the committee were Cheryl Haake, the UPES Principal, and Defendant George, who served as a facilitator.  Following the initial screening of applications, twelve individuals, including Walter, were scheduled for district level interviews.  (*See* Nyhart Aff. Ex. C.)  Each committee member who submitted an affidavit stated that the overall consensus was that the candidates simply were not impressive in their interviews, with the exception of candidate Andrew Smith.  (Amo Aff. ¶ 25; Lewis Aff. ¶ 18; Nyhart Aff. ¶ 16; Takacs Aff. ¶ 16.)

The various recollections of Walter's interview were that she was not enthusiastic

about the interview process (Amo ¶ 26), presented herself as someone who was going through the motions, and displayed an attitude not of one trying to sell herself, but as someone who should not be required to go through the process (Nyhart ¶ 18, Lewis ¶ 21; Takacs ¶ 19).   During committee discussions, Nyhart reported that a male physical education teacher at another District school found Walter abrasive when he interacted with her socially.  (Nyhart ¶ 19.)  Three committee members had heard that one UPES fifth grade teacher believed Walter spoke harshly to children and did not always treat them kindly, and two committee members expressed concerns about Walter's ability to work cooperatively and effectively with colleagues based on their interactions with her.  (*See* Nyhart ¶ 19; Lewis ¶¶ 12, 22; Takacs ¶ 20.)  Based on the committee's assessment of Walter's interview and their discussion of the concerns raised, they decided not to advance Walter to the building level interviews.  (Amo ¶ 28.)

Although the committee's reasoning rests primarily on subjective impressions, the District has articulated a legitimate business reason for reaching a consensus that Walter was not the "best candidate"—specifically, concerns over her ability to communicate effectively with students and work cooperatively with colleagues.  The explanation is not so vague or conclusory as to deprive Walter the opportunity of demonstrating pretext.

### (iii.)   The February 2004 Position

Walter alleges age discrimination in violation of the ADEA with respect to the February 2004 position, which was filled by a much younger, female candidate.

Defendants have submitted the affidavits of Kelly Owens, Margaret Moses and Jackie Peffer, all of whom served on the district level committee.  Also on the committee

were Dave Davison, Mike McFadden and Defendant George.   Following the initial screening of applications, eleven individuals, including Walter, were scheduled for district level interviews.  (*See* Owens Aff. Ex. B.)

Owens and Peffer state that they had the impression Walter was going through the motions, exhibited no real enthusiasm, displayed an attitude of arrogance and did not attempt to sell herself.  (Owens ¶ 17; Peffer ¶ 17.)  Both viewed the absence of enthusiasm as a detriment to Walter's ability to motivate adolescents.  (*Id*.)  However, it appears that neither shared their concerns with the other committee members and no affiant can recall any committee discussion about Walter's candidacy.  (*Id*.; *also*, Moses ¶ 17 (Moses also has no particular recollection of Walter's interview)).  Nor do the committee members have any specific recollections as to the attributes of the successful candidates.  They merely state that the two candidates who advanced to the building level interviews "clearly stood out as the 'best candidates;'" there is no reason given as to why the committee reached a consensus that this was "clearly" so.

The District's explanation does not provide any clear and specific basis for the committee's consensus not to select Walter or, conversely, to select the candidates that it did.  Because Defendants have not come forward with a clear and specific legitimate reason to which Walter has a full and fair opportunity to respond, summary judgment is not warranted as to the February 2004 position.

### (iv.)   November 2004

Walter alleged in her Complaint that she applied for and was denied a physical education teaching position at Boston Valley Elementary School in November 2004.

(Compl. ¶¶ 48, 63.)  However, she now states that she did not and could not apply for the position because it was never posted or advertised.  (Walter Aff. ¶¶ 67-68.)  It appears that the decision not to post the position and/or the decision not to consider Walter's application, which should then have been maintained as current in the District's files (Biltekoff Aff., Ex. D), now forms the basis for her claim relative to this position.

Defendants have not addressed this position in their Memorandum, Statement of Undisputed Material Facts, or in any affidavit or exhibit.  Because Defendants have offered no facts or explanation relative to the November 2004 hiring, summary judgment is not warranted with respect to this position.

### c.      Walter's Evidence of Pretext

Because Defendants have succeeded in stating a clear and specific legitimate business reason only for the 2003 hiring decision, that is the sole position for which the burden again shifts to Walter to demonstrate pretext.

To show that an employer's stated reasons are pretextual, a plaintiff must come forward with something more than the fact that someone younger or of the other gender was hired. Richane, 179 F. Supp. 2d at 87.  A plaintiff must establish a genuine issue of material fact, either through direct, statistical or circumstantial evidence as to: (1) whether the employer's reasons for not hiring her are false, and (2) whether she can satisfy her ultimate burden of persuading the trier of fact that the employer intentionally discriminated against her. Id. at 86.

A unanimous Supreme Court has stated that, "in appropriate circumstances, the trier of fact can reasonably infer from the falsity of the explanation that the employer is

dissembling to cover up a discriminatory purpose." Reeves v. Sanderson Plumbing Prod., Inc., 530 U.S. 133, 147, 120 S. Ct. 2097, 147 L. Ed. 2d 105 (2000).  In other words, the factfinder's disbelief of the employer's reasons, together with the elements of a *prima facie* case, may suffice to show intentional discrimination.  *Id.*  Whether evidence of falsity plus the *prima facie* showing is adequate to defeat summary judgment depends on a number of factors including the strength of the *prima facie* case, the probative value of the plaintiff's proof that the employer's explanation is false, and other evidence that supports the employer's case.  *Id.* at 148-49.  Walter urges that her evidentiary showing is sufficient to defeat summary judgment here.

In 2003, the District offered the PE teaching position to Brian Dux.  Brian Dux ranked 34th of the 43 candidates whose application packets were screened and, based on that low ranking, was not selected initially for an interview.  (Nyhart Aff. ¶¶ 21-22, Exs. B and C.)  Furthermore, Brian Dux did not meet the minimum qualifications for the position in that he did not possess even a provisional teaching certificate.  (*Id.* ¶ 28.)  When that information came to light, the offer was rescinded and the position was offered to and accepted by Andrew Smith.  (*Id.*)  Smith ranked 7th on the basis of his application packet while Walter ranked 11th.  Both were selected for the first round of district level interviews.  As noted above, the committee considered Smith to be the only impressive candidate during that first round of interviews.

Walter urges that her credentials and experience were superior to Smith's; specifically, she had a Master degree and he did not, her teaching certification was permanent while his was provisional, and she had permanent and long-term substitute

teaching experience whereas he had no permanent and only occasional substitute experience.  (*Compare* Walter Aff., Exs. 7 and 19.)

In addition, Walter argues that a number of circumstances raise questions as to the credibility of Defendants' purported concerns about her treatment of children, ability to work well with colleagues and interview performance.  They include:

- the District's decisions to approve two annual renewals of her initial long-term substitute contract (Walter Aff. Ex. 10);

- her positive District evaluations while working as a long-term substitute, which note her positive rapport with students and effective communication and collaboration with colleagues (*Id.* Ex. 11);

- the letters of recommendations submitted by Walter from three of the five active members of the district level committee—Amo, who had completed one of her positive performance reviews; Nyhart, a PE teacher who worked with Walter throughout her tenure at UPES; and Haake, the UPES principal—noting, among other things, her ability to work effectively with fellow staff members and the respect she had gained from colleagues and parents (*Id.* Ex. 12);

- the additional recommendations from the UPES assistant principal, the Armor Elementary principal and a member of the interview committee for her long term substitute position noting her excellent rapport with children, positive and productive working relationships with staff, classroom enthusiasm and ability to handle behavioral problems compassionately and fairly (*Id.*); and

- Walter's own attestation as to her preparedness and enthusiasm during the interview process, during which she presented her resume, a portfolio of lesson plans, successful grant applications, and appreciation letters from parents and students, and after which she sent thank you notes to all committee members (*Id.* ¶ 71, Ex. 22).

In sum, Walter contends that her evidence raises a genuine question of fact as to whether the District's stated reasons are worthy of belief.

Finally, Walter argues that the absence of any articulated hiring guidelines or criteria for committee members permitted their biases to work to the advantage of younger and/or

male candidates, at least with respect to PE positions.  As evidence of such bias, Walter points to a ranking system under which her 20 years of teaching experience could be rated a "2" out of 5 while Dux's fourteen weeks of student teaching was worthy of a "4," and her Master degree could be valued as a "2" while Dux's Bachelor degree was rated a "5" out of 5 in terms of scholastic achievement.  (Walter Aff. Exs. 16-17.)  Walter also points to committee member Lewis' attestation that after the initial screening, which resulted in Walter being among the top twelve candidates to proceed to interviews, Lewis considered all interviewees equally qualified, except for Walter, whom she viewed as not qualified. (Lewis Aff. ¶ 15.)  According to Walter, had the District applied a modicum of criteria for candidate assessment, she necessarily would have been viewed by all committee members as at least equally qualified based on her credentials.

Defendants counter that Walter fails to distinguish this case from Richane, and her subjective opinion that she was more experienced than the candidate hired is not sufficient to raise a triable issue of fact as to the veracity of Defendants' articulated reasons for the District's 2003 hiring decision.  First, this Court rejects Defendants' reading of Walter's opposition papers as relying solely upon her superior qualifications.

This Court also disagrees with Defendants' characterization of this action as virtually indistinguishable from Richane.  In Richane, the court found that the plaintiff, having cited to no specific testimony or documents that would raise a question of fact, "present[ed] little, if any, independent evidence supporting the inference that Fairport's stated reasons" were pretextual.  179 F. Supp. 2d at 87.  Summary judgment was found to be appropriate because the plaintiff had not credibly called the employer's non-discriminatory explanation for its motives into question.  *Id*.

33

Here, on the other hand, Walter's evidence includes statements of the Defendants that expressly contradict the reasons they now give for not selecting her as the "best" candidate.  This Court finds that Walter's evidence is sufficient to raise a genuine question of fact as to the credibility of Defendants' explanation.  Moreover, the evidence, coupled with the *prima facie* showing of Defendants' having selected much younger males over Walter on four occasions and a much younger female over Walter on another occasion, could permit a trier of fact to conclude that Defendants' reasons are false and also to infer that the real reason was age and/or gender discrimination.  Thus, summary judgment in Defendants' favor is not warranted as to the 2003 hiring decision.

**3.     The Retaliation Claims**

To establish a *prima facie* case of retaliation, under either Title VII, the ADEA, Title IX or the HRL, an employee must show:  (1) she was engaged in a protected activity, (2) her employer was aware of her participation in the activity, (3) her employer took an  action against her that was so materially adverse a reasonable employee would have been dissuaded from engaging in protected activity, and (4) there is a causal connection between the protected activity and the adverse action—that is, a retaliatory motive played a part in the action.  Burlington N. & Santa Fe Ry. v. White, ___ U.S. ___, 126 S. Ct. 2405, 165 L. Ed. 2d 345 (2006).  The allocation of burdens of proof in retaliation claims parallels that of discrimination claims.  Reed v. A.W. Lawrence & Co., 95 F.3d 1170, 1178 (2d Cir. 1996) (citations omitted).

A "protected activity" is an act that opposes any perceived unlawful discriminatory practice.  *See* Sumner v. United States Postal Serv., 899 F.2d 203, 209 (2d Cir. 1990)

(explaining that "a plaintiff need not prove the merit of his underlying discrimination complaint, but only that he was acting under a good faith reasonable belief that a violation existed").  A complaint may be formal or informal, but it constitutes protected activity only if the complainant puts the employer on notice that she believes that discrimination is occurring.  Laurin v. Pokoik, 02 Civ. 1938, 2005 U.S. Dist. LEXIS 6728, at *9-10 (S.D.N.Y. April 18, 2005) (citations omitted).

Here, Walter claims that she was retaliated against after she complained to Defendant George, on June 12, 2002, about not being hired in 2000 and 2002, and after she filed an EEOC charge complaining of age and gender discrimination on November 4, 2003.  Thus, she asserts that the hiring decisions made in 2003 and 2004 were retaliatory as well as discriminatory.

Although Defendants purport to move for summary judgment dismissing this action in its entirety, they do not discuss the retaliation claims in their Memorandum or Statement of Undisputed Material Facts.  Walter, not surprisingly, has not opposed Defendants' motion on the basis of an issue that was not briefed.  Because Defendants have not provided facts or law on the issue of retaliation, they are not entitled to summary judgment on those claims.

## IV.  CONCLUSION

For the foregoing reasons, Defendants' Motion for Summary Judgment is granted in part and denied in part.  Specifically, the claims that remain are as follows:

- Counts I and VI - Title VII discrimination and retaliation against the District based on the September 2003 and November 2004 hiring decisions;

- Counts II, IV and VI - HRL gender discrimination, age discrimination and retaliation against the District, Daniel George and Charles Amo based on the

September 2003 hiring decision;

• Counts III and VI - ADEA discrimination and retaliation against the District based on the September 2003, February 2004 and November 2004 hiring decisions; and

• Counts V and VI - Title IX discrimination against the District based on the June 2002 hiring decision, and Title IX discrimination and retaliation based on the September 2003 and November 2004 hiring decisions.

To the extent Walter's claims are based on incidents or brought against Defendants not specified above, they are dismissed.

## ORDERS

IT HEREBY IS ORDERED, that Defendants' Motion for Summary Judgment (Docket No. 40) is granted in part and denied in part.

FURTHER, that the Clerk of the Court shall terminate Peter Roswell as a Defendant to this action.


SO ORDERED.


Dated:      May 17, 2007
             Buffalo, New York


                                        /s/William M. Skretny
                                         WILLIAM M. SKRETNY
                                        United States District Judge